UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RAYMOND MARTIN WILSON,                    Case No. 18-10008

      Plaintiff                         Stephen J. Murphy, III
v.                                        United States District Judge

MICHIGAN DEPARTMENT OF                    Stephanie Dawkins Davis
CORRECTIONS, *et al.*,                    United States Magistrate Judge

      Defendants.

_____/

**REPORT AND RECOMMENDATION
DEFENDANTS' MOTION TO DISMISS AND
MOTIONS FOR SUMMARY JUDGMENT (Dkt. 15, 27, 44)**

## I.   PROCEDURAL HISTORY

Plaintiff, Raymond Martin Wilson, is a prisoner in the custody of the

Michigan Department of Corrections (MDOC).  He filed a complaint against

defendants MDOC, Corizon Health, Inc., and certain MDOC employees under the

Americans With Disabilities Act (ADA) on January 2, 2018.  (Dkt. 1).  Wilson

also appears to be making a complaint against defendants Hamblin, Dase, and

Forbes[1] under the Eighth Amendment.  (Dkt. 1, pp. 7-8).  Corizon Health filed a

motion to dismiss the claims against it under Rule 12(b)(6).  (Dkt. 15).  This

motion is fully briefed.  (Dkt. 23, 24).  Defendants MDOC, Richard Dase, and

---

[1] Defendant Forbes has not yet been served with the summons and complaint.

Mick Roberts filed a motion for summary judgment based on Wilson's failure to exhaust administrative remedies.  (Dkt. 27).  This motion is also fully briefed. (Dkt. 36, 36, 38).  Finally,  defendants K. Hamblin, Connie J. Ives, and C. Whitford filed a motion for summary judgment also based on failure to exhaust administrative remedies, along with their assertion that Wilson alleges insufficient personal involvement to sustain a claim against these defendants under 42 U.S.C. § 1983.  (Dkt. 44).  On February 4, 2019, Wilson filed a response to this motion. (Dkt. 45).  These motions are now ready for report and recommendation.

For the reasons set forth below, the undersigned **RECOMMENDS** that the Court **GRANT** Corizon Health's motion to dismiss and **DENY** the MDOC defendants' motions for summary judgment, without prejudice.

## II.    FACTUAL BACKGROUND

According to his complaint, Wilson suffered from prostate cancer and his prostate was removed in 2006.  (Dkt. 1, p. 3).  Wilson says because of the surgery, radiation treatment, and hormone injection therapy, he is unable to hold urine.  *Id*. Because of this condition, he wears incontinence pads or diapers.  *Id*.  Wilson says that his condition has limited his ability to function normally and engage in activities such as exercise and showering.  *Id*.  Wilson maintains that the accommodations for his condition have not been an issue at other correctional facilities, but when he arrived at Parnell Correctional Facility (SMT) in June 2017,

nursing staff refused his accommodations.  *Id*. at 4.  Wilson says that he repeatedly

was denied access to incontinence pads or diapers and was forced to sit in wet

clothes for days.  *Id*.

Wilson says that nursing staff refused to supply him with an adequate supply

of incontinence pads or diapers for four weeks until he was finally able to see a

Physician's Assistant on July 7, 2017.  At that time, Wilson was allotted 40 pads

per week, as a documented special accommodation.  *Id*.  Nursing staff again began

denying him access to adequate supplies, requiring him to submit a kite each week.

Wilson says he was degraded, laughed at, and humiliated each time he went to pick

up his supplies.  *Id*.  He says he suffered potential kidney failure due to a lack of

water to avoid urinating as frequently.  *Id*.  Wilson also alleges that he had to miss

several meals because he had no supplies to avoid wetting himself around others,

causing him emotional stress and embarrassment.  *Id*. at 5.

Wilson claims he filed several grievances about these issues that went

unanswered or were denied by Hamblin.  *Id*.  The acts of denial of his supplies

allegedly got worse every time he would file a grievance or try to talk to anyone

about his issues.  *Id*.  He also says the following about the grievance process:

> I filed a grievance on this, either denied or now a new
> tactic, deny first grievance, then give no identifier
> numbers to following 3 grievances, then tell me that step
> 2 needs to deal with all these issues, after resending them
> again saying I need to send the first grievance that I

> didn't get back to follow through these 3 grievances from
> the first grievances.

(Dkt. 1, p. 6).

Wilson asks the Court to declare that he is a disabled person under Title II of the ADA; that MDOC is a public entity under Title II; that defendants Roberts, Ives, Forbes, Dase, Hamblin, Whitford, MDOC and PHS (presumably Corizon) discriminated against him in violation of the ADA by excluding him from the benefits of meals and activities and privileges of the prison population, and refused to make a reasonable accommodation of his medical needs; actions were taken in retaliation for filing grievances.  Wilson also requests compensatory damages for emotional distress based on his allegations that he was forced to sit in wet clothing and was therefore denied various privileges; for retaliation; for violations of the Eighth Amendment; for violations of the grievance policy; and for violations of the ADA.  (Dkt. 1, pp. 6-8).

## III.   ANALYSIS AND CONCLUSION

### A.   Standards of Review

#### 1.   Motion to dismiss

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must first comply with Rule 8(a)(2), which requires "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atlantic*

*Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  A plaintiff is also obliged "to provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Association of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555 (citations and internal quotation marks omitted)).  In *Iqbal*, the Supreme Court explained that a civil complaint only survives a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  And, while a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Id.* (quoting *Twombly*, 550 U.S. at 555 (citation and internal quotation marks omitted)); *see also League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (the factual allegations in a complaint need not be detailed but they "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief.").

5

A complaint filed by a *pro se* plaintiff must be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted).  Thus, when applying *Twombly*, except as to a claim of fraud, the Court must still read plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519 (1972), and accept plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992); *Erickson*, 551 U.S. at 93-94 (The Court of Appeals improperly departed "from the liberal pleading standards set forth by Rule 8(a)(2)" and failed to liberally construe" the *pro se* complaint at issue.).

          2.     Summary Judgment [2]

When a party files a motion for summary judgment, it must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a).  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record...; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or

---

[2] While some judges in this District have treated motions for summary judgment on the issue of failure to exhaust administrative remedies as unenumerated motions to dismiss under Rule 12(b)(6), *see e.g.*, *Neal v. Raddatz*, 2012 WL 488827 (E.D. Mich. Jan. 12, 2012), report and recommendation adopted in pertinent part, 2012 WL 488702 (E.D. Mich. Feb. 15, 2012), it has been more recently concluded in a published opinion that such a practice is not appropriate and legally unsupported.  *See Anderson v. Jutzy*, 175 F.Supp.3d 781, 788 (E.D. Mich. 2016).

that an adverse party cannot produce admissible evidence to support the fact."

Fed.R.Civ.P. 56(c)(1). The standard for determining whether summary judgment

is appropriate is "whether the evidence presents a sufficient disagreement to

require submission to a jury or whether it is so one-sided that one party must

prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d

433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

251-52 (1986)). Furthermore, the evidence and all reasonable inferences must be

construed in the light most favorable to the non-moving party. *Matsushita Elec.

Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Where the movant establishes the lack of a genuine issue of material fact,

the burden of demonstrating the existence of such an issue shifts to the non-moving

party to come forward with "specific facts showing that there is a genuine issue for

trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). That is, the party

opposing a motion for summary judgment must make an affirmative showing with

proper evidence and must "designate specific facts in affidavits, depositions, or

other factual material showing 'evidence on which the jury could reasonably find

for the plaintiff.'" *Brown v. Scott*, 329 F.Supp.2d 905, 910 (6th Cir. 2004).

In order to fulfill this burden, the non-moving party need only demonstrate the

minimal standard that a jury could ostensibly find in his favor. *Anderson*, 477 U.S.

at 248; *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

However, mere allegations or denials in the non-movant's pleadings will not satisfy this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 251.

The Court's role is limited to determining whether there is a genuine dispute about a material fact, that is, if the evidence in the case "is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Such a determination requires that the Court "view the evidence presented through the prism of the substantive evidentiary burden" applicable to the case. *Id*. at 254. Thus, if the plaintiff must ultimately prove its case at trial by a preponderance of the evidence, on a motion for summary judgment the Court must determine whether a jury could reasonably find that the plaintiff's factual contentions are true by a preponderance of the evidence. *See id.* at 252-53. Finally, if the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the movant is entitled to summary judgment. *Celotex*, 477 U.S. at 323. The Court must construe Rule 56 with due regard not only for the rights of those "asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury," but also for the rights of those "opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis." *Id*. at 327.

B.    Corizon's Motion to Dismiss ADA Claims

Under the ADA, Wilson must establish that: (1) he is a qualified person with a disability; (2) Corizon is subject to the ADA; and (3) he was denied the opportunity to participate in or benefit from Corizon's services, programs, or activities, or was otherwise discriminated against by Corizon, by reason of his disability. *Anderson v. City of Blue Ash*, 798 F.3d 338, 357 (6th Cir. 2015). The ADA applies to state prisoners, *McKinley v. Bowlen*, 2001 WL 493394, at *1 (6th Cir. May 1, 2001). Corizon correctly asserts that it is not a public entity subject to suit under the ADA even though it contracts with a public entity such as the MDOC to provide a service. *Larson v. Michigan Dep't of Corr.*, 2018 WL 2717493, at *3 (E.D. Mich. June 5, 2018) (Hood, J.) (citing *Matthews v. Pennsylvania Dep't of Corr.*, 613 Fed. Appx. 163, 169-70 (3d Cir. 2015)) (("[Corizon] is not a public entity subject to suit under the ADA even if it contracts with a public entity to provide a service.")); *Cox v. Jackson*, 579 F. Supp. 2d 831, 852 (E.D. Mich. 2008) ("A private contractor does not become a 'public entity' under Title II merely by contracting with a governmental entity to provide governmental services" and thus, prison health service company was not subject to suit under ADA.).

Wilson's response to Corizon's motion does not address the fact that Corizon is not a "public entity" under the ADA. Rather, Wilson goes on to detail

all the wrongs committed by defendants.  This does nothing to save his claim

against Corizon under the ADA.  Thus, Wilson's claims against Corizon under the

ADA fail as a matter of law and must be dismissed.

      C.    <u>Exhaustion of Administrative Remedies</u>

      1.    Legal Standard

Title 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with

respect to prison conditions under section 1983 of this title, or any other Federal

law, by a prisoner confined in any jail, prison, or other correctional facility until

such administrative remedies as are available are exhausted."  Section 1997e(a)'s

"exhaustion requirement applies to all prisoners seeking redress for prison

circumstances or occurrences."  *Porter v. Nussle,* 534 U.S. 516, 520 (2002).

"[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life,

whether they involve general circumstances or particular episodes, and whether

they allege excessive force or some other wrong."  *Porter*, 534 U.S. at 532.  In

*Jones v. Bock,* 549 U.S. 199 (2007), the Supreme Court held that "failure to

exhaust is an affirmative defense under the PLRA," and "inmates are not required

to specially plead or demonstrate exhaustion in their complaints." *Jones,* 549 U.S.

at 216.  "Compliance with prison grievance procedures ... is all that is required by

the PLRA to 'properly exhaust.'"  *Jones,* 549 U.S. at 218.  "Congress has provided

in § 1997e(a) that an inmate must exhaust irrespective of the forms of relief sought

and offered through administrative avenues." *Booth v. Churner,* 532 U.S. 731, 741 n. 6 (2001). "[P]roper exhaustion of administrative remedies is necessary." *Woodford v. Ngo*, 548 U.S. 81, 84 (2006).

In *Jones v. Bock*, the Supreme Court also held that the burden rests on the defendant to show that a plaintiff failed to exhaust when asserting exhaustion as an affirmative defense. *Jones*, 549 U.S. at 218. Accordingly, exhaustion is satisfied if plaintiff complied with the applicable MDOC grievance procedure and defendants bear the burden of showing otherwise. *Kramer v. Wilkinson*, 226 Fed. Appx. 461, 462 (6th Cir. 2007) (A prisoner-plaintiff "does not bear the burden of specially pleading and proving exhaustion; rather, this affirmative defense may serve as a basis for dismissal only if raised and proven by the defendants.").

A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden–the plaintiff on a claim for relief or the defendant on an affirmative defense–his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has emphasized repeatedly that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful

11

that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561.

Here, defendants bear the burden of proof on their affirmative defense of failure to

exhaust administrative remedies.  "As long as the state clearly rejects a grievance

for a reason explicitly set forth in the applicable grievance procedure, a subsequent

§ 1983 claim based on the grievance will be subject to dismissal for failure to

properly exhaust." *Burnett v. Howard*, 2010 WL 1286256, *1 (W.D. Mich. 2010).

>           2.    MDOC Grievance Procedure

The MDOC defendants provide the administrative grievance process

applicable to plaintiff's claims.  Pursuant to MDOC policy directive 03.02.130

entitled "Prisoner/Parolee Grievances," there are four stages to the grievance

process that a prisoner must follow before seeking judicial intervention, each with

specific time limits.  (Dkt. 27-5, Ex. D, MDOC Policy Directive 03.02.130,

"Prisoner/Parolee Grievances" (effective date 07/09/2007)).  First, the prisoner

must attempt to verbally resolve the issue with the staff member(s) involved within

two business days of becoming aware of a grievable issue.  *Id*. ¶ P.  If the issue is

not resolved, the prisoner may then file a Step I grievance, which must be

accomplished within five business days of the attempted verbal resolution.  *Id*.

¶¶ P, V.  If the prisoner is not satisfied with the Step I outcome, or he does not

receive a timely response, he must file a Step II appeal within 10 business days of

response, or if, no response was received, within 10 business days of when the

response was due.  *Id*. ¶ BB.  If the inmate is still not satisfied with the result, he must then file a Step III appeal within 10 business days of receiving the response, or if no response is provided, within 10 business days of when it was due.  The Step III response ends the administrative process.  *Id*.  ¶ FF.

When filing a grievance and/or grievance appeal, an inmate must state the facts involved with the issue being grieved and must also include the "[d]ates, times, places, and names of all those involved in the issue being grieved."  *Id*.  ¶ R. A grievance may be rejected if it is vague, illegible, contains multiple unrelated issues, or raises issues that are duplicative of those raised in another grievance filed by the grievant.  *Id*. ¶ G.  A grievance may also be rejected if the grievance is untimely but may not be rejected if there is a valid reason for the delay.  *Id*. ¶ G.4.

Grievances and grievance appeals at all steps are considered filed on the date sent by the grievant.  The total grievance process from the point of filing a Step I grievance to providing a Step III response must generally be completed within 120 calendar days unless an extension has been approved in writing by the Grievance Coordinator at Step I and/or Step II.  According to the policy, an extension for a Step I or II response may not exceed 15 business days unless the grievance falls within the jurisdiction of the Internal Affairs Division.  The Grievance Coordinator is required to immediately notify the grievant in writing whenever an extension has

been approved; the extension must also be noted in the grievance response.  *Id*.
¶ S.

        3.    Discussion

      The MDOC defendants argue that Wilson did not properly exhaust any
claim before filing this lawsuit.  According to the records provided by defendants,
the only grievance filed through the Step III appeal which involved allegations at
SMT was filed at Step I in March 2018, two months after Wilson filed his
complaint.  (Dkt. 27-2, Ex. A).  Defendants point out that the Sixth Circuit
precedent does not allow a prisoner to exhaust his claim(s) while the lawsuit is
pending.  *See Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999) (all steps
involved in the grievance process must be completed prior to filing a federal
lawsuit).

      Defendants also maintain that grievances SMT-17-11-1416-28c and SMT-
17-07-0803-12z do not demonstrate proper exhaustion because Wilson did not file
a Step II or Step III appeal after the rejection or denial of these grievances.  As set
forth in the grievance policy, Step I grievances that are rejected, denied, or for
which no response is received can be appealed to Step II or Step III.  (Dkt. 27-5,
Ex. D, ¶¶ BB, FF).  And, a prisoner who is dissatisfied with a response is required
to do so before  filing a complaint in district court.  *Hartsfield v. Vidor*, 199 F.3d
305, 309-10 (6th Cir. 1999) (recognizing that "an inmate cannot simply fail to file

a grievance or abandon the process before completion and claim he has exhausted his remedies or that it is futile for him to do so….").  Proper exhaustion requires following all three steps of MDOC's grievance process.  *Id*.  Defendants maintain that Wilson failed to do so here.

In his second response to defendants' motion for summary judgment, Wilson says that he tried several times to show why grievances were variously denied, rejected at initial filing, and denied at Steps I and II.  Further, he says that his Step III appeals were never answered.  (Dkt. 38, p. 2).  In his first response to the motions for summary judgment, he says he filed many grievances at all three steps, but he does not know what happened to these documents after he put them in the box of his prison block.  (Dkt. 35, p. 5).  Wilson maintains that he has filed many grievances through Step III and is still waiting to hear back.  *Id*.  Wilson also argues that the ADA does not require exhaustion of administrative remedies before filing suit in court.  (Dkt. 35, pp. 3, 5).  In his second response, Wilson points to Policy Directive 04.06.155 entitled New Offenders With Disabilities, effective August 1, 2018.  (Dkt. 38, p. 2).  According to Wilson, this policy provides that an offender cannot grieve a final determination made under this policy directive.  *Id*.  PD 04.06.155  is attached to his first response.  (Dkt. 35, Pg ID 221-223).  Wilson appears to be suggesting that because his claims fall under the ADA, he was

neither permitted nor required to grieve them under the MDOC's three step grievance procedure.

To the extent that Wilson claims he was not required to use the three-step grievance process to exhaust his ADA claims, he is incorrect. It is well-settled that the PLRA's exhaustion requirement applies to all actions brought under § 1983 or "any other Federal law," including the ADA. *See Basat v. Caruso*, 2008 WL 275679, at *3 (E.D. Mich. Jan. 31, 2008) (citing *Porter v. Nussle*, 534 U.S. 516 (2002)); *Thompson v. Robertson*, 2017 WL 1048018, at *5 (M.D. Tenn. Mar. 20, 2017) ("In order to bring a federal lawsuit based on prison officials' violation of the Americans With Disabilities Act or other federal law, the plaintiff must first seek a reasonable accommodation from the appropriate prison authorities, bring a grievance in accordance with the prison's Grievance Policy if such requests are not satisfactorily resolved, and pursue the denial or unfavorable outcome of the grievances through a Level III appeal."); *O'Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056, 1061-62 (9th Cir. 2007) (interpreting § 1997e(a) "as requiring prisoners to exhaust prison administrative remedies for claims under Title II of the ADA").

The undersigned is also not persuaded that PD 04.06.155 removes the requirement that Wilson exhaust his ADA claims. This policy provides that an offender cannot grieve a final determination made under the policy. (Dkt. 35, Pg ID 223). Nothing in this record suggests, however, that any decision issued under

this policy is the subject of Wilson's complaint. The policy provides directions for an offender to request a reasonable accommodation from the MDOC that is not covered under the medical policy. Such a request is sent to the Worksite Offender ADA Coordinator for review and processing. (Dkt. 35, Pg ID 222). The appropriate Administrator then works with the Statewide Offender ADA Coordinator to make a decision on the request. If the decision is not favorable to the offender, he or she can appeal. The MDOC EEO Administrator then makes a final decision. *Id*. at 223. Nothing in Wilson's complaint or multiple responses to the motions for summary judgment suggests that he made any request under this policy.[3] Thus, the undersigned finds that this policy is inapplicable and does not excuse Wilson from compliance with the MDOC three-step grievance policy.

As set forth above, defendants provide evidence that the only grievance filed through a Step III appeal involving allegations at SMT was filed at Step I in March 2018, two months after Wilson filed his complaint. (Dkt. 27-2, Ex. A). Defendants correctly point out that this grievance did not exhaust Wilson's claims because he cannot perfect the exhaustion requirement during the pendency of his case. *See Roberts v. Lamanna*, 45 Fed. Appx. 515 (6th Cir. 2002) (plaintiff "cannot exhaust [administrative] remedies during the pendency of the action");

---

[3] Notably, Policy Directive 04.06.155 became effective *after* Wilson filed his complaint in this matter.

*Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999); *Wyatt v. Leonard*, 193

F.3d 876, 878-79 (6th Cir. 1999); *Boles v. Overton*, 396 F.Supp.2d 808, 809 (E.D.

Mich. 2005) ("As exhaustion of internal remedies is a *precondition to filing* an

action in federal court, the Sixth Circuit has held that a prisoner cannot satisfy

Section 1997e by exhausting administrative remedies during the pendency of the

federal suit.") (emphasis in original).

Wilson seems to concede that he did not actually complete the three-step

process outlined in the MDOC grievance procedure and the evidence in the record

bears this out.  (Dkt. 1, Pg ID 21, 29, 31-36; Dkt. 27-3, Ex. B).  Ordinarily such a

concession would end the inquiry, but his complaint and his responses to the

motions for summary judgment suggest that he believes defendants "thwarted" or

otherwise prevented him from completing the process.  Notably, where

administrative remedies have effectively been rendered unavailable, a prisoner

may be excused from pursuing them to completion.  In *Ross v. Blake*, 136 S.Ct.

1850, 1858-59 (2016), the Supreme Court concluded that if the prisoner is

effectively barred from pursuing a remedy by policy or by the interference of

officials, the grievance process is not available, and exhaustion is not required.

The Court articulated three scenarios under which a prison's grievance procedures

may be rendered unavailable:

> As relevant here, there are three kinds of circumstances
> in which an administrative remedy, although officially on

the books, is not capable of use to obtain relief.  First, an
administrative procedure is unavailable when it operates
as a simple dead end—with officers unable or consistently
unwilling to provide any relief to aggrieved inmates.
Next, an administrative scheme might be so opaque that
it becomes, practically speaking, incapable of use—i.e.,
some mechanism exists to provide relief, but no ordinary
prisoner can navigate it.  And finally, a grievance process
is rendered unavailable when prison administrators
thwart inmates from taking advantage of it through
machination, misrepresentation, or intimidation.

*Id*. at 1858-1860.

Even before *Ross v. Blake*, the Sixth Circuit made it clear that when a

prisoner brings forth evidence of thwarting, it is the defendants' obligation to

"show the absence of a genuine issue of material fact as to [plaintiff's] exhaustion

of administrative remedies."  *Surles v. Andison*, 678 F.3d 452, 456 (6th Cir. 2012).

In *Surles*, which involved a pre-discovery motion for summary judgment on

exhaustion, the Court found a disputed question of material fact as to whether

prison officials prevented Surles from filing grievances and exhausting his

administrative remedies.  In his opposition to the motions for summary judgment,

Surles said that when he tried to file a grievance, prison officials refused to file or

process his grievances.  In finding a question of material fact, the court concluded

that the defendants "presented no proof that they did not interfere with Surles's

ability to exhaust his administrative remedies."  *Id*. at 457.  The court found

insufficient the defendants' evidence suggesting that Surles was able to complete

the grievance process as to other grievances: "That Surles was able to file some grievances does not mean that he was able to file all relevant grievances or that he was not prevented from timely filing the grievances." *Id.*

In his second response Wilson says he tried to exhaust his administrative remedies but was "completely stonewalled." (Dkt. 38). He refers the court to the exhibits attached to his complaint.[4] As set forth above, Wilson's complaint contains allegations that he was given the "run around" with respect to the filing of grievances. (Dkt. 1, Pg ID 6). And, the attachments to Wilson's complaint provide some material evidence suggestive of thwarting. Wilson offers what appears to be a somewhat contemporaneous document in which he records:

> On 11-15-17 I received my grievances that were filed on 11-10-17. There were three (3) of them and I got them all back today with a sticky tab stating that I now need to go to step two (2) to address these grievances. The first one I filed was rejected because there were supposedly to [sic] many issues and to [sic] many people involved, first grievance identifier #SMT1711614116028C. THERE WAS NO IDENTIFIER NUMBER ON ANY OF THE 3 GRIEVANCES THAT I JUST GOT BACK TODAY. I was told to address them all separately. *I did as I was instructed.* (emphasis supplied). Now I need to get some resolution to this problem. As it is on going [sic] [word illegible] I have been here since 6-9-17 and have been consistently Lied to, Disrespected, Degraded, Humiliated, Embarrassed, Sexually degraded because of

---

[4] In his response to the motion filed by Hamblin, Ives, and Whitford, Wilson attaches several more grievance related documents. (Dkt. 45). However, all these documents are dated after he filed his complaint in this matter and thus, do not operate to exhaust any claims. *See Roberts v. Lamanna*, 45 Fed. Appx. 515 (6th Cir. 2002).

> the cancer that I have.  P.D. 03.04.100 ANY act or lack
> of care that significantly impairs the health of any
> prisoner. I have been out of TENA PADS or anything
> else at least 10 times since I have been here.  Now the
> Grievance Coordinator does not put Identifiers on the
> grievances.  This is a violation of policy neglecting due
> process by refusing to give identifiers on legally filed
> grievances.

(Dkt. 1, Pg ID 34, emphasis in original).  Wilson also alleges in his complaint that

he filed several grievances that were never answered.  (Dkt. 1, Pg ID 5).  There is

also some support for this allegation in the attachments to the complaint, which

suggest attempts to grieve issues without any grievance identifiers.  (Dkt. 1, Pg ID

32, 35, 26).

Wilson's allegations at least suggest that he followed the instructions

provided by defendants for refiling rejected grievances, but for reasons that are not

clear, prison officials did not process his grievances.  Just as in *Surles*, defendants

have not offered any evidence rebutting Wilson's assertions that prison officials

interfered with his attempts to exhaust his administrative remedies.  At this time,

defendants have not met their burden of establishing non-exhaustion.  With

discovery and a full complement of appropriate affidavits and documentary

evidence, defendants may well be able to meet that burden in the future, but they

have not yet done so.  Accordingly, the undersigned concludes that defendants'

motion for summary judgment based on failure to exhaust administrative remedies

should be denied without prejudice.

D.   <u>Personal Involvement</u>[5]

Defendants Hamblin, Whitford, and Ives separately move for summary judgment arguing that Wilson has not alleged sufficient personal involvement to maintain a § 1983 claim against them.  According to defendants, Wilson's claims against Hamblin, Ives, and Whitford in his complaint arise solely from their responses to his grievances.  More specifically, Wilson alleges that Hamblin "handled the grievance)s) [sic] written against health care on several occasions, denying every one of them for personal reasons…"  (Dkt. 1, Pg ID 2).  Wilson claims he was called out by Hamblin for interviews on the grievances and that she denied them, "making promises that she never intended to keep."  *Id.* at Pg ID 5.  Wilson also alleges that Hamblin "either never answered, or denied" his grievances, and that this denial was "abuse of authority and power, and deliberate indifference to medical needs."  *Id.*  He claims Ives "co/signed each grievance filed against the medical department with this prisoner with total indifference to the supplies that are supposed to be ordered by staff doctor…"  *Id.* at Pg ID 2-3.  And he claims that Whitford, the "Grievance Coordinator," receives and forwards the grievances to Hamblin and "has done an inadequate investigation into the allegations of Plaintiff and inevitability [sic] denied grievances."  *Id.* at Pg ID 3.

---

[5] While labeled a motion for summary judgment, defendants do not rely on any evidence outside of the complaint to support their motion as it relates to personal involvement.

Defendants Hamblin, Whitford, and Ives assert that the complaint contains no allegations that they were involved in the decision of how many TENA pads should be provided to Wilson, which is the issue underlying the complaint. And, their involvement in the grievance process is not sufficient to impose liability. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (recognizing that denial of administrative grievances insufficient to allege personal involvement for purposes of 42 U.S.C. § 1983); *Lee v. Michigan Parole Board*, 104 Fed. Appx. 490, 492-93 (6th Cir. 2004) (plaintiff may not maintain a claim against a defendant based solely on his/her involvement in the grievance process). In response, Wilson argues that Hamblin is a nurse and was involved in the decisions to deny him TENA pads. (Dkt. 45, Pg ID 293). He argues that Hamblin and Whitford were apprised of the situation before and after a grievance is filed. *Id*.

It is generally true that where a defendant's "only role[] ... involve[s] the denial of administrative grievances or the failure to act ... [he or she] cannot be liable under § 1983." *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). However, if a defendant is a medical professional reviewing a recommendation for care made by other medical professionals, the result may be different. *See e.g.*, *Titlow v. Correctional Med. Servs.*, 2008 WL 2697306, *12 (E.D. Mich. 2008) ("However, [the] *Shehee* defendants were not medical professionals reviewing the recommendations of other medical professionals."). Further, as explained in

23

*Calhoun v. Hill*, 2008 WL 4277171, at *7 (E.D. Mich. Sept. 17, 2008) (Lawson,

J.), although the failure to remedy retaliatory behavior is not a constitutional

violation in itself, an official who "knows of and disregards an excessive risk to

inmate health or safety" may be liable under the Eighth Amendment. *Id.* (citing

*Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). In *Calhoun*, Judge Lawson

concluded that "o[]ne who rejects a grievance conceivably could qualify, under

some set of circumstances, as deliberately indifferent" and that "[t]here is no case

that exempts a prison official who was deliberately indifferent to a serious medical

need from liability simply because he occupies the position of supervisor or

grievance respondent." *Id.* at *7 (*see also Edwards v. Jenkins*, 2014 WL 1746123,

at *3 (E.D. Mich. Apr. 30, 2014) (Borman, J.) (citing *Calhoun*)).

At this stage of the proceedings, the Court finds it premature and improper

to determine, under a summary judgment standard, whether defendants' roles in

the events described in the complaint fall within the scope of *Shehee* or *Titlow* and

*Calhoun*. As noted above, defendants offer no evidence in support of their motion

for summary judgment. Rather, they rely solely on the allegations in Wilson's

complaint. Yet, in framing their motion as one for summary judgment, defendants

have perhaps tacitly acknowledged that Wilson's complaint meets the standard for

surviving dismissal. Whether or not defendants made any such acknowledgement,

they have not offered an analysis under the dismissal standard articulated in *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544, (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) – nor have they provided notice to the opposing *pro se* plaintiff that they may be seeking such relief – hence the undersigned makes no finding in that regard.  As to summary judgment, not only have defendants declined to offer any evidence to support the motion, Wilson has not yet had an opportunity to develop any evidence to support his claims, given that discovery has not yet begun.  Under such circumstances, the Sixth Circuit has found it to be error for the court to grant a motion challenging the sufficiency of the plaintiff's evidence to support a § 1983 before the plaintiff has had an opportunity to conduct discovery to support his position.  *See Binion v. Glover*, 2008 WL 4097407 (E.D. Mich. Aug. 29, 2008) (Lawson, J.) (citing *Myers v. Potter*,  422 F.3d 347, 358 (6th Cir. 2005)); *see also Tucker v. Union of Needletrades, Indus. & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005) ("In contrast [to a motion to dismiss], a motion for summary judgment may not be granted until a plaintiff has had an opportunity for discovery.").  Thus, deciding the issue of personal involvement based solely on the allegations in the complaint, under a summary judgment standard, is not appropriate at this time.

25

## IV.  RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that the Court **GRANT** Corizon Health's motion to dismiss and **DENY** the MDOC defendants' motions for summary judgment, without prejudice.

The parties to this action may object to and seek review of this Report and Recommendation but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the

same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: June 6, 2019                     s/Stephanie Dawkins Davis
                                       Stephanie Dawkins Davis
                                       United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on June 6, 2019, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record and I have mailed by United States Postal Service to the following non-ECF participant: Raymond Martin Wilson, 6843 West M72, Grayling, MI 49738.

                                       s/Tammy Hallwood
                                       Case Manager
                                       (810) 341-7887
                                       tammy_hallwood@mied.uscourts.gov