UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RAYMOND MARTIN WILSON,

    Plaintiff,

v.

MICHIGAN DEPARTMENT OF
CORRECTIONS, et al.,

    Defendants.
                                     /

Case No. 2:18-cv-10008

HONORABLE STEPHEN J. MURPHY, III

## **OMNIBUS ORDER**

On January 2, 2018, Plaintiff Raymond Martin Wilson filed his pro se prisoner complaint alleging that Defendants violated his constitutional rights and the Americans with Disabilities Act ("ADA"). ECF 1. Wilson identified the following parties as Defendants: Michigan Department of Corrections ("MDOC"), Corizon Incorporated Collectively Corizon Corporations ("Corizon"), Sonya Forbes,[1] Richard Dase, K. Hamblin, Connie J. Ives, Mick Roberts, and C. Whitford. The Court referred all pretrial matters to Magistrate Judge Stephanie Dawkins Davis. ECF 6.

On September 12, 2018, Corizon filed a motion to dismiss. ECF 15. On October 24, 2018, MDOC, Dase, and Roberts filed a motion for summary judgment. ECF 27. On January 7, 2019, Hamblin, Ives, and Whitford filed a motion for summary judgment. ECF 44.

---

[1] Plaintiff has not served Sonya Forbes. *See* ECF 51 (order requiring Plaintiff to provide a correct address for Sonya Forbes by July 7, 2019).

1

On June 6, 2019, Magistrate Judge Davis submitted her report and recommendation ("Report") and recommended that the Court grant Corizon's motion to dismiss and deny the MDOC Defendants'[2] motions for summary judgment. ECF 50. The MDOC Defendants timely objected. ECF 52. For the reasons below, the Court will adopt in part and reject in part the Report, will grant Corizon's motion to dismiss, and will grant the MDOC Defendants' motions for summary judgment.

## BACKGROUND

The Report adequately recounts the facts of the case. ECF 50, PgID 317–19. The Court fully adopts the recitation here.

## LEGAL STANDARD

Civil Rule 72(b) governs the review of a magistrate judge's report. A district court's standard of review depends on whether a party files objections. The Court need not review portions of a Report to which no party objected. *Thomas v. Arn*, 474 U.S. 140, 153 (1985). The Civil Rules require de novo review, however, if the parties "serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). In conducting a de novo review, "[t]he district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

---

[2] MDOC, Dase, Hamblin, Ives, Roberts, and Whitford.

## DISCUSSION

I. <u>Screening the Complaint</u>

The Court must review "a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). The Court "shall . . . dismiss the complaint, or any portion of the complaint, if the complaint . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2) (statute governing complaints filed by in forma pauperis plaintiffs).

The Report explains that MDOC Defendants did not offer "an analysis under the dismissal standard" for Rule 12(b)(6) motions and did not provide "notice to the opposing *pro se* plaintiff that they may be seeking such relief." ECF 50, PgID 339–40. Thus, the Report "makes no finding" on whether Plaintiff's complaint fails to state a claim for relief. *Id.* at 340. But, as noted, the Court has a statutory obligation to review each civil complaint filed against a governmental employee—or by an in forma pauperis prisoner—to determine whether it states a claim. Based on the Report's language, it appears that the magistrate judge did not screen the complaint. The Court therefore will screen the complaint.

A. *Applicable Standards.*

In the context of a prisoner's civil rights complaint, two broad standards guide the Court's review of the complaint. First, the standard for whether a complaint states a claim on which relief can be granted, as articulated in the context of Rule 12(b)(6). Second, the standards related to § 1983 liability.

3

1. Failure to state a claim.

When deciding whether a complaint fails to state a claim on which relief can be granted, the Court views the complaint in the light most favorable to the plaintiff, presumes the truth of all well-pleaded factual allegations, and draws every reasonable inference in favor of the non-moving party. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). "[T]he complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Nat'l Hockey League Players Ass'n v. Plymouth Whalers Hockey Club*, 419 F.3d 462, 468 (6th Cir. 2005) (citation omitted). Plaintiff must allege facts "sufficient 'to raise a right to relief above the speculative level,' and to 'state a claim to relief that is plausible on its face.'" *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). If "a cause of action fails as a matter of law, regardless of whether the plaintiff's factual allegations are true," then it fails to state a claim. *Winnett v. Caterpillar, Inc.*, 553 F.3d 1000, 1005 (6th Cir. 2009).

2. Liability under § 1983.

To establish a claim under 42 U.S.C. § 1983, a plaintiff must provide factually-supported allegations that a particular defendant "(1) deprived him of a right secured by the Constitution and laws of the United States, (2) while acting under color of state law." *Doe v. Wigginton*, 21 F.3d 733, 738 (6th Cir. 1994) (internal citations and marks omitted).

4

B. *Wilson's Claims Against Forbes, Hamblin, Whitford, and Ives.*

Wilson's claims against Forbes, Hamblin, Whitford, and Ives fail to state a claim upon which relief can be granted. The Court addresses the insufficiency of Wilson's allegations.

1. Claims against Sonya Forbes.

Wilson alleges that Forbes served as his "medical provider" and was responsible for "caring for the prisoners, insuring that disabled prisoners were not discriminated against, harassed, disrespected, degraded, or humiliated." ECF 1, PgID 2. He claims that Forbes violated Title II of the ADA and that she acted discriminatorily, disrespected him, degraded him sexually, and degraded him for his medical conditions. ECF 1, PgID 8. Wilson fails to allege any facts that are "sufficient 'to raise a right to relief above the speculative level,' and to 'state a claim to relief that is plausible on its face.'" *Hensley*, 579 F.3d at 609 (quoting *Twombly*, 550 U.S. at 570). Forbes must be dismissed from the case.

2. Claims related to the grievance process.

Involvement in the grievance process is not sufficient to impose liability. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (recognizing that allegations of denial of administrative grievances is insufficient to impose liability under 42 U.S.C. § 1983); *see Lee v. Mich. Parole Bd.*, 104 F. App'x 490, 492–93 (6th Cir. 2004) (acknowledging that a plaintiff may not maintain a claim against a defendant based solely on his or her involvement in the grievance process). Moreover, a prisoner lacks

5

a constitutional right to an adequate grievance process. *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003).

Wilson alleges that Hamblin "handled the [grievances] written against health care on several occasions." She interviewed Wilson, "denied each and every" grievance, and made "promises that she never intended to keep." ECF 1, PgID 2.

He alleges that Ives "co/signed each grievance filed against the medical department" by him and that she displayed "total indifference" to the level of necessary medical supplies that the doctors are supposed to order. ECF 1, PgID 2.

Finally, Wilson alleges that Whitford knew of his medical condition because he "receives the grievances and forwards them to K. Hamblin where they are denied by K. Hamblin and Connie Ives." ECF 1. PgID 3. He further maintains that Whitford "has done an inadequate investigation into the allegations of Plaintiff and [inevitably] denied grievances." ECF 1, PgID 3. And, in the process, Whitford allegedly failed to comply with MDOC policy in denying grievances. *Id.* at 8.

Wilson does not allege that Hamblin, Ives, or Whitford "directly participated [in], encouraged, authorized or acquiesced in the claimed" constitutional wrongs. *Shehee*, 199 F.3d at 300. Wilson's allegations do not state a claim for relief.

### 3. Claims of violations of Title II of the ADA.

Wilson alleges that Defendants Hamblin, Ives, and Whitford violated his rights under Title II of the ADA. The ADA prohibits a public entity from excluding from participation in or denying the benefits of its "services, programs, or activities," or subjecting to discrimination, a "qualified individual with a disability . . . by reason of

6

such disability." 42 U.S.C. § 12132. To make a prima facie case of intentional discrimination under Title II, a plaintiff must show that "(1) [he] has a disability; (2) he is otherwise qualified; and (3) [he] was being excluded from participation in, denied the benefits of, or subjected to discrimination under the program because of [his] disability." *Anderson v. City of Blue Ash*, 798 F.3d 338, 357 (6th Cir. 2015). Wilson has failed to allege facts satisfying any of the three elements of the prima facie case. He therefore fails to state a claim under Title II of the ADA against Hamblin, Ives, and Whitford.

        4. Remaining claims against Hamblin.

Finally, Wilson claims that Hamblin retaliated against him and violated the Eighth Amendment "by failing to provide adequate medical treatment" and by being deliberately indifferent towards him. ECF 1, PgID 7.

A retaliation claim entails three elements:

> (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). Plaintiff does not allege facts related to Hamblin to satisfy the prima facie case of a First Amendment retaliation claim.

Section 1983 liability for supervisors cannot be based on mere respondeat superior; rather, a supervisor's failure to supervise, control, or train subordinates is actionable only if the supervisor "either encouraged the specific incident of

7

misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (quoting *Hays v. Jefferson Cty.*, 668 F.3d 869, 874 (6th Cir. 1982)). At a minimum, therefore, a plaintiff must show the supervisor "implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct" of the offending officers. *Id.* The showing must rely upon each government official's "own individual actions[.]" *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Here, Wilson does not allege facts that show Hamblin was in a supervisory role over any individual that committed an alleged Eighth Amendment violation or that she encouraged or participated in a constitutional violation. He therefore fails to state an Eighth Amendment claim against her.[3]

II. <u>Corizon's Motion to Dismiss</u>

The Report recommended granting Corizon's motion to dismiss because Corizon is not a public entity for purposes of the ADA. ECF 50, PgID 324–25. Wilson did not object to the recommendation. The Report's conclusions are factually based and legally sound. The Court therefore adopts the Report's recommendation.

---

[3] In the Report, the magistrate judge—in recommending denial of Hamblin, Ives, and Whitford's motion for summary judgment—declined to grant the motion because "a medical professional reviewing a recommendation for care" may be liable, even if that professional takes no other unconstitutional action. *See* ECF 50, PgID 338 (citing *Titlow v. Corr. Med. Servs.*, No. 07–12083, 2008 WL 2697306, at *12 (E.D. Mich. July 3, 2008)). But the case has no bearing here when Wilson dpoes not allege that Hamblin was a medical professional, just that she handled his medical care-related grievances. Also, the magistrate judge relied on *Calhoun v. Hill*, No. 07–11613, 2008 WL 4277171, at *7 (E.D. Mich. Sept. 17, 2008), but like the prisoner-plaintiff in *Calhoun*, Wilson "failed to provide any allegations" against Hamblin that would qualify her for supervisory liability under § 1983. Moreover, denying the entire motion on that basis would have been improper because Wilson did not make Eighth Amendment claims against Ives or Whitford.

8

III. <u>MDOC Defendants' Motions for Summary Judgment</u>

    A. *Hamblin, Ives, and Whitford's Motion for Summary Judgment.*

Because the Court screened the complaint and determined that Wilson failed to state claims for relief against Hamblin, Ives, and Whitford, their motion for summary judgment is moot.[4] The Court therefore rejects the Report as to their motion.

    B. *MDOC, Dase, and Roberts's Motion for Summary Judgment.*

The Report recommended denying without prejudice MDOC Defendants' motion for summary judgment based on failure to exhaust administrative remedies. *See* ECF 50, PgID 336. Particularly, the Report determined that MDOC Defendants' actions made the grievance procedure unavailable.

    1. Exhaustion.

Pursuant to the Prison Litigation Reform Act ("PLRA"), a prisoner must exhaust administrative remedies before filing suit. 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). But a prisoner is not required to plead exhaustion; rather, a prison must raise failure to exhaust administrative remedies as an affirmative defense. 42 U.S.C. § 1997e(a); *Jones v. Bock*, 549 U.S. 199, 212 (2007). At summary judgment, the prison must prove that no reasonable jury could find that the plaintiff exhausted his administrative remedies. *Surles v. Andison*, 678 F.3d 452, 455–56 (6th Cir. 2012).

---

[4] Hamblin, Ives, and Whitford concurred in the other motion for summary judgment.

9

The PLRA "requires proper exhaustion." *Woodford*, 548 U.S. at 93. A federal exhaustion standard does not exist. So, a prisoner properly "exhausts his remedies when he complies with the grievance procedures put forward by his correctional institution." *Mattox v. Edelman*, 851 F.3d 583, 590 (6th Cir. 2017) (citing *Jones*, 549 U.S. at 217–19); *see also Woodford*, 548 U.S. at 90 (describing proper exhaustion in administrate law as requiring "compliance with an agency's deadlines and other critical procedural rules"); *see further Napier v. Laurel Cty.*, 636 F.3d 218, 224 (6th Cir. 2011) (stating "a prisoner must do what is required by the grievance policy"). A prisoner's "[f]ailure to file an administrative grievance within proper time limits precludes proper exhaustion and thus bars the claim in federal court." *Reynolds-Bey v. Harris-Spicer*, 428 F. App'x 493, 500 (6th Cir. 2011) (citing *Woodford*, 548 U.S. at 93). To exhaust his administrative remedies, therefore, a prisoner must comply with the prison's grievance procedures. If a prisoner fails to do so, courts typically dismiss unexhausted claims and address the merits of exhausted claims. *Jones*, 549 U.S. at 220–24.

The Report noted that Wilson seemed "to concede that he did not actually complete the three-step process outlined in the MDOC grievance procedure." *Id.* at 333. The Report explained that the MDOC Defendants "provide[d] evidence that the only grievance" that complied with the grievance procedure was filed *after* Wilson filed his complaint in the case, and that "the evidence in the record bears [that] out." *Id.* at 332–33. Wilson did not object to the factual finding. The Report correctly found that Wilson failed to properly exhaust his administrative remedies.

10

2. Excusing failure to properly exhaust.

Courts may excuse a prisoner's failure to exhaust if the administrative remedies were not available. Before addressing whether administrative procedures were unavailable, the prisoner must present evidence of his affirmative efforts to comply with the procedures. *See Rivers v. Turner*, No. 16-4241, 2017 WL 9249945, at *2 (6th Cir. Dec. 15, 2017) (citing *Napier*, 636 F.3d at 224). The prisoner's affirmative efforts, even if unsuccessful, must be "sufficient under the circumstances." *Lee v. Wiley*, 789 F.3d 673, 677 (6th Cir. 2015) (quoting *Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011)).

A grievance procedure is unavailable if: (1) the procedure offers "a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) no ordinary prisoner could navigate the procedures; or (3) prison officials "through machination, misrepresentation, or intimidation" "thwart inmates from taking advantage" of the procedures. *Ross v. Blake*, 136 S. Ct. 1850, 1858–60 (2016).

The Report stated that Wilson's "complaint and his responses to the motions for summary judgment suggest that he believes defendants 'thwarted' or otherwise prevented him from completing the process." *Id.* at 333. The Report recounted that Wilson received grievances without an identifier number and explained that Wilson alleged "that he filed several grievances that were never answered." ECF 50, PgID 335–36.

### a. *The grievance identifiers without numbers.*

First, the Court will address the three grievances without identifier numbers. *See* ECF 1, PgID 32, 35, 36. Wilson claims that he was "completely stonewalled" and given the "run around." ECF 38, PgID 236; ECF 1, PgID 6. The Report concluded that Wilson's allegations "suggest that he followed instructions . . ., but for reasons that are not clear, prison officials did not process his grievances." ECF 50, PgID 336. But the Report misapprehends the record. Wilson, in an apparently "somewhat contemporaneous document," stated that he "received [his] grievances. . . . There were three of them and [he] got them all back today with a sticky tab stating that" he needed to proceed to the grievance procedure's second step. ECF 50, PgID 335 (quoting ECF 1, PgID 34).

The page containing the sticky note contained a grievance identifier. *See* ECF 1, PgID 29 (noting grievance identifier as "SMT 1710146028C"). And the note stated that Wilson's grievances "all need[ed] to be addressed at Step II." *Id.* Then, following the cover page was the reason for the Step I rejection of Wilson's grievance and the three grievance forms. *Id.* at 30–36.

Per the prison's instructions, Wilson should have directed his appeal to the grievance coordinator by November 22 and, presumably, should have used the grievance identifier noted at the top of the cover page with his three separate grievance forms. *See id.* at 29. And, if Wilson did not appeal by November 22, then it was his own conduct—and not the prison officials'—that prevented him from exhausting his administrative remedies. And, Wilson's own contemporaneous

account shows that the grievances were returned with a grievance identifier on the cover page. Wilson thus fails to present evidence that he was thwarted by prison officials.

Even if the Court assumed that the three grievances forms, *id.* at 32–36, were submitted separately, Wilson failed to present sufficient evidence to excuse his failure to exhaust.[5] The grievances lack any indicia that Wilson ever submitted them to prison officials. For example, there is no notation of the date prison officials received it, no signature of the reviewing prison official, and no other writing that is not Wilson's. *See* ECF 1, PgID 32–36. A grievance form with information input only by a prisoner, with nothing else, is not sufficient evidence of affirmative efforts to comply with the grievance procedures. *See Rivers v. Turner*, No. 16-4241, 2017 WL 9249945, at *2 (6th Cir. Dec. 15, 2017) (citing *Napier*, 636 F.3d at 224).

      b.  *MDOC Defendants' non-response to Wilson's grievances.*

Second, the Report made passing mention that the prison's alleged non-answer to Wilson's grievances justified a finding that the grievance procedure was unavailable to him. *See* ECF 50, PgID 336. But the comment fails to properly consider MDOC's grievance policy ("Policy").

The Policy requires the prison to respond within 15 business days of receipt of a Step I grievance. ECF 27-5, PgID 192 ¶ X. But if the prisoner does not receive a timely response to his Step I grievance, he may file a Step II grievance. *Id.* at 193

---

[5] Again, the assumption goes against Wilson's own contemporaneous account. In light of that conflict, a reasonable jury could not decide in Wilson's favor that the grievance procedure was unavailable to him.

¶ BB. The Step II grievance form must be filed within ten business days of the expiration of the prison's time to respond. *Id.* Then, if the prisoner again does not receive a timely response to his Step II grievance, he may file a Step III grievance. *Id.* at 194 ¶ FF. *See also Annabel v. Erichsen*, 2:15-cv-10345, 2018 WL 3436726, at *6–*7 (E.D. Mich. July 17, 2018) (detailing MDOC's grievance procedure). Thus, prison officials' non-response to a grievance is not a basis for the procedure to be unavailable because the Policy provides an avenue for a prisoner to appeal even a non-response.

    3. Conclusion.

Based on the foregoing, MDOC Defendants presented evidence that Wilson failed to properly exhaust his administrative remedies. Wilson conceded the issue. And Wilson failed to present sufficient evidence to show that he adequately took affirmative steps to comply with the procedure. And, even if he did, there is no evidence that the prison officials' conduct made the grievance procedures unavailable to him. The Court will therefore reject the Report's recommendation and grant the MDOC Defendants' motion for summary judgment.

**ORDER**

**WHEREFORE**, it is hereby **ORDERED** that the Magistrate Judge's Report and Recommendation [50] is **ADOPTED IN PART** and **REJECTED IN PART**.

**IT IS FURTHER ORDERED** that the claims against Defendants Sonya Forbes, K. Hamblin, Connie J. Ives, and C. Whitford fail to state a claim and are **DISMISSED** without prejudice.

**IT IS FURTHER ORDERED** that Defendant Corizon Incorporated Collectively Corizon Corporations' motion to dismiss [15] is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants Michigan Department of Corrections, Richard Dase, and Mick Roberts's motion for summary judgment [27] is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants K. Hamblin, Connie J. Ives, and C. Whitford's motion for summary judgment [44] is **MOOT**.

This is a final order and closes the case.

**SO ORDERED.**

                                          s/ Stephen J. Murphy, III
                                          STEPHEN J. MURPHY, III
                                          United States District Judge

Dated: August 9, 2019

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on August 9, 2019, by electronic and/or ordinary mail.

                                          s/ David P. Parker
                                          Case Manager